**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **RICHARD LEHAN,** *et al.***,** | * | |
| **Plaintiffs,** | * | |
| **v.** | | **Case No.: GJH-21-00362** |
| | * | |
| **DEPUTY SHERIFF RICHARD S. WILSON,** *et al.***,** | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiffs Richard and Tamara Lehan filed a thirteen-count Complaint against Defendants Deputy Sheriff Richard S. Wilson, in his official and individual capacity ("Corporal Wilson"), the Calvert County Board of County Commissioners ("Calvert County"), the State of Maryland ("the State"), and A&A Gaming, LLC alleging an unlawful pattern and practice of excessive force and unlawful seizure, as well as individual allegations of excessive force and unlawful seizure in violation of 42 U.S.C. § 1983 (Counts I–IV), battery (Count V), false arrest (Count VI), malicious prosecution (Count VII), negligent training, supervision, and retention (Counts VIII–IX), violations of Article 24 of the Maryland Declaration of Rights for excessive force (Count X), violations of Article 26 of the Maryland Declaration of Rights for excessive force and depravation of liberty (Count XI), unlawful pattern and practice of violating the Maryland Declaration of Rights (Count XII), and intentional infliction of emotional distress (Count XIII) all arising from a physical altercation that occurred on March 23, 2019 at Abner's Crabhouse, a popular restaurant and bar in Chesapeake Beach, Maryland. ECF No. 1. Pending before the Court are a number of motions including Defendant Calvert County's Motion to Dismiss for

1

Failure to State a Claim, ECF No. 8, State Defendant's Motion to Dismiss for Failure to State a

Claim, ECF No. 10,[1] and A&A Gaming Defendant's Motion to Dismiss, ECF No. 18.[2] No

hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant

Calvert County's Motion to Dismiss, ECF No. 8, is granted, and Defendant A&A Gaming's

Motion to Dismiss, ECF No. 18, is granted, in part, and denied, in part.

## I.      BACKGROUND[3]

### A.  The Parties

Plaintiffs Richard and Tamara Lehan are adult residents of the State of Maryland and

currently reside in Broomes Island, Maryland. ECF No. 1 ¶¶ 3–4. Until his retirement, Mr. Lehan

was a Lieutenant with the D.C. Fire Department for over thirty years. *Id.* ¶ 3.

Defendant Corporal Richard S. Wilson (#3614) is an employee of the Calvert County

Sheriff's Office and a part-time employee of A&A Gaming at Abner's Crabhouse and is being

sued in his official and individual capacity. *Id.* ¶ 5. Plaintiffs contend that, at all times relevant,

Defendant Corporal Wilson "acted in his individual capacity and in his official capacity a dual

agent of both Defendant Calvert County and Defendant State of Maryland." *Id.* ¶ 7. Defendant

Calvert County Board of Commissioners is a public body organized under Md. Code, Art. 25

that governs Calvert County, Maryland, and is comprised of five individuals elected to serve at-

large, four-years terms. *Id.* ¶ 6. Defendant A&A Gaming is a limited liability company in good

standing in Maryland with its principal place of business in Chesapeake Beach, Maryland. *Id.* ¶

---

[1] On April 29, 2021, Plaintiffs filed a Notice of Dismissal Without Prejudice of Defendant State of Maryland, ECF No. 23, in which they voluntarily dismissed their claims against Defendant State of Maryland.

[2] Also pending before the Court is Plaintiffs' Consent Motion to Extend Time for Response to Defendant State of Maryland's Motion to Dismiss, ECF No. 14, which the Court now grants.

[3] Unless otherwise stated, the background facts are taken from Plaintiffs' Complaint, ECF No. 1, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

9. A&A Gaming operates pull tab machines and other games within Abner's Crabhouse, which is also located in Chesapeake Beach, Maryland. Plaintiffs contend that A&A Gaming employed Defendant Corporal Wilson part time to work at Abner's, and that he was also acting within the scope of his employment as an agent, servant, and employee of A&A Gaming. *Id.*

## B. Factual Background

Abner's Crabhouse, owned and operated by A&A Gaming, is a popular restaurant and bar in Chesapeake Beach, Maryland that offers slot and other gaming machines through A&A Gaming. ECF No. 1 ¶ 11. On March 23, 2019, between 9:15 and 9:30pm, Plaintiffs Richard and Tamara Lehan arrived at Abner's after finishing their dinner at a restaurant in Solomons Island, Maryland. *Id.* ¶¶ 10, 13. Plaintiffs had been going to Abner's for over four years and were familiar to waiters and bartenders who worked there. *Id.* ¶ 11. On the evening of March 23, A&A Gaming was holding a raffle at Abner's, in relation to one of its video bingo machines, for which the cash prize was $10,000. *Id.* ¶ 12. As a result of the raffle, the bar was busier than a typical Saturday evening. *Id.* After arriving, Plaintiffs found Mr. Lehan's son, joined him at the bar, and ordered drinks, talked, laughed, and danced with their family. *Id.* ¶ 13. Plaintiffs contend that "[t]heir conduct was nothing unusual for a Saturday night at a bar." *Id.*

Defendant Corporal Wilson, who "was on duty for A&A Gaming while also maintaining his full law enforcement authority" on the evening of March 23, stood behind Plaintiffs while they were at the bar. *Id.* ¶ 14. Plaintiffs contend that he wore a Calvert County Sherriff's Uniform. *Id.* Defendant Corporal Wilson has worked for several years as a part time employee of A&A Gaming at Abner's and has provided security services in the bar as needed, including when events such as raffles took place. *Id.* Approximately an hour after they arrived, Mr. Lehan "turned from a nearby table to walk back to the bar and inadvertently bumped into another

patron." *Id.* ¶ 15. That patron then bumped into Defendant Corporal Wilson. *Id.* After Mr. Lehan rejoined his family at the bar, Plaintiffs contend that he leaned over his shoulder and apologized to Defendant Corporal Wilson for bumping into him, though he did not respond and "instead just stared at Mr. Lehan." *Id.* Plaintiffs additionally allege that shortly thereafter, another male patron walking through the bar bumped into the same female patron Mr. Lehan bumped into, and that Defendant Corporal Wilson did not say anything to the male patron. *Id.* ¶ 16.

Although Mr. Lehan "was not engaged in any disruptive or unusual conduct," Plaintiffs allege that Defendant Corporal Wilson told Mr. Lehan that he was "cutting him off from ordering any more drinks at the bar" and that they needed to leave. *Id.* ¶ 17. Mr. Lehan then asked Defendant Corporal Wilson "if he was a rookie" because Mr. Lehan had not previously seen him at Abner's and was familiar with the other law enforcement officers who worked there. *Id.* "Frustrated by how Corporal Wilson was treating him," Mr. Lehan signaled across the bar for Detective Michael Mudd to join them "so he could ask Detective Mudd why Corporal Wilson was harassing them." *Id.* ¶ 18. Detective Mudd, an employee of the Calvert County Sheriff's Office Criminal Investigation Bureau, had also, "for years," worked part time at Abner's, and he was working the evening of March 23 to handle crowd control given the large raffle. *Id.* ¶ 19. Plaintiffs contend that they were "acquainted" with Detective Mudd because "they would have friendly conversations over the years when [they] would visit Abner's," and because he has described them as "'good people' who are polite and friendly." *Id.* When Detective Mudd arrived at the other side of the bar with Plaintiffs, Defendant Corporal Wilson told Detective Mudd that he asked Plaintiffs to leave. *Id.* ¶ 20. Detective Mudd spoke to Plaintiffs and "told them that, even though they had not been doing anything wrong, they should just listen to Corporal Wilson

4

and leave." *Id.* Detective Mudd also spoke briefly to Defendant Corporal Wilson before returning to the other side of the bar. *Id.*

Plaintiffs prepared to leave by returning to the bar and requesting their check from the bartender. *Id.* ¶ 21. Plaintiffs contend that Detective Mudd observed Mr. Lehan giving his credit card to the bartender to pay his tab, but that given the large crowd, it was "taking some time for the bartenders to close out[.]" *Id.* Plaintiffs also allege that Defendant Corporal Wilson continued to stand behind them while they closed out their tab and that, "for no reason," he requested for Detective Mudd to return to their area of the bar "after claiming that Mr. Lehan was cursing." *Id.* ¶¶ 22–23. Detective Mudd inquired with Mr. Lehan as to the status of his bill and observed that the bartender had not yet returned, but Defendant Corporal Wilson "was still hovering right behind them watching Mr. Lehan." *Id.* ¶ 24. Mr. Lehan commented to Defendant Corporal Wilson that "he was 'acting like an asshole' and did not understand what Corporal Wilson's problem appeared to be with him." *Id.*

After the bartender returned with Mr. Lehan's credit card, and while he was talking to Detective Mudd as he prepared to leave the bar, Plaintiffs contend that, "without warning or provocation," Defendant Corporal Wilson "lunged forward toward Mr. Lehan, pushed past Detective Mudd, and grabbed Mr. Lehan," who was also being pulled in several directions by other bar patrons, including his son, and "began punching Mr. Lehan repeatedly in the face." *Id.* ¶ 25. Defendant Corporal Wilson pushed Mr. Lehan to the ground and continued to punch him in the face and upper body, which caused Mr. Lehan to black out. *Id.* ¶ 26. As a result of Defendant Corporal Wilson's "punching and pummeling him," Mr. Lehan immediately began to bleed from the mouth and "suffered a black eye, deviated septum, a swollen lip, injured wrists, and a torn bicep." *Id.* During this altercation, which Plaintiff describes as an assault, Mrs. Lehan "made

efforts to stop Corporal Wilson by trying to separate the two men." *Id.* ¶ 27. Detective Mudd "pulled Mr. Lehan up from the ground," and walked him out of the bar, and he was ultimately handcuffed. *Id.* ¶ 28. Defendant Corporal Wilson handcuffed Mrs. Lehan while she was inside the bar and escorted her outside, after which he placed both Plaintiffs under arrest and into sheriff's vehicles. *Id.* Plaintiffs were then transported to the Calvert County Detention Center where they were searched, fingerprinted, booked, and "forced to stay overnight in the Detention Center." *Id.* Plaintiffs were not released until the following day after they appeared before a commissioner. *Id.*

Plaintiffs were both charged with "second degree assault of a law enforcement officer, disorderly conduct, failure to obey, and resisting or interfering with an arrest." *Id.* ¶ 29. Following their arrest, Plaintiffs filed an internal affairs complaint with the Calvert County Sheriff's Office as to the "unlawful conduct of Corporal Wilson." *Id.* ¶ 30. On July 24, 2019, in the District Court for Calvert County, a bench trial was held for both Plaintiffs in which Mr. Lehan, Detective Mudd, and Corporal Wilson testified.[4] *Id.* ¶ 31. Although Defendant Corporal Wilson was advised of his Fifth Amendment right to remain silent during his trial, he testified that "no one at Abner's had complained to him about the Lehans," and that "his procedure in the past where individuals had been asked to leave was to allow them to pay their tab before escorting them out." *Id.* ¶ 32. He also testified that "he delivered more than one blow" to Mr. Lehan both while they were standing and while he was on the ground, and that he was suspended from the Calvert County Sheriff's Office at the time of the trial due to an internal investigation. *Id.* ¶¶ 33–34. Defendant Corporal Wilson "acknowledged that he himself did not sustain any

---

[4] The state cases are *State v. Tamara Wood Lehan*, Case No. D-041-CR-19-000636 and *State v. Richard Kevin Lehan*, Case No. D-041-CR-19-000637.

injuries nor did he require any medical attention." *Id.* ¶ 33. Detective Mudd testified that he knew Plaintiffs were in the process of paying their bill, that Mr. Lehan's behavior "was not out of line for Abner's," that there was "nothing that drew his attention to Mr. Lehan in the bar," and that he did not see Mr. Lehan "deliver any punches or attempt to punch anyone and that it was Corporal Wilson who appeared agitated, excited, and upset." *Id.* ¶¶ 35, 37. Plaintiffs were both found not guilty of all charges. *Id.* ¶ 36.

Plaintiffs contend that Defendant Corporal Wilson used excessive force in repeatedly punching Mr. Lehan in the face and that they were following his order to leave the bar when they waited for their bartender to close out their tab when Defendant Corporal Wilson "attacked" Mr. Lehan. *Id.* ¶¶ 38–39. Plaintiffs allege that, as a result of being assaulted, falsely arrested, and maliciously prosecuted, they have "suffered actual damages, embarrassment, humiliation, and emotional damages." *Id.* ¶ 41. Moreover, Mr. Lehan alleges that he suffered "a deviated septum, swollen lip, injured wrists, and torn bicep," and that he suffered and continues to suffer from "severe headaches several times a day, memory loss, sleep disruption, and significant neurological issues, including post-concussion syndrome." *Id.* ¶ 41. As a result of the incident between Plaintiffs and Defendant Corporal Wilson, Plaintiffs allege that Mr. Lehan's employer initiated an investigation and proposed a suspension against him related to the wrongful arrest, and that, as a result, Mr. Lehan was forced to retire even though he intended to continue working for several more years. *Id.* ¶ 42. Further, Mrs. Lehan alleges that, as a result of Defendant Corporal Wilson's conduct, including her false arrest and malicious prosecution, she has suffered damages "including, but not limited to, emotional harm and distress, humiliation, embarrassment, mental pain and suffering, fright, and anxiety." *Id.* ¶ 43.

Additionally, Plaintiffs contend that Defendant Corporal Wilson has a "history of using excessive force," and that prior to his encounter with Plaintiffs, "Defendants had actual knowledge that Corporal Wilson has a demonstrated propensity to use unlawful and excessive force." *Id.* ¶ 44. Plaintiffs proffer that on September 2, 2018, Corporal Wilson pulled over another Calvert County resident, John Alvarado, and that when Mr. Alvarado declined to take a breathalyzer exam, another deputy sheriff handcuffed him behind his back, placed him under arrest, and walked him towards the police vehicle. *Id.* ¶ 45. "Without provocation, warning or cause," Plaintiffs aver that Corporal Wilson "grabbed Mr. Alvarado by the head, smashed his head against the side of the patrol car, and shoved him in the backseat of the patrol vehicle." *Id.* ¶ 46. While Mr. Alvarado was handcuffed in the backseat, Corporal Wilson "punched him three to five times in the face," and the "other deputy sheriff had to tell Corporal Wilson 'that's enough' and physically pull him back" to end the assault. *Id.*

Plaintiffs contend the use of force against Mr. Alvarado was unconstitutional, and that on April 2, 2019, the Calvert County Sheriff's Office sent Mr. Alvarado a letter informing him that they investigated the incident including a review of body camera footage, and Corporal Wilson was "mandated to attend de-escalation training." *Id.* ¶ 48. Plaintiffs contend that Defendant Corporal Wilson should have been immediately taken off the force following his assault of Mr. Alvarado and that, therefore, the Calvert County Sherriff's Office was "well aware" of Defendant Corporal Wilson's history of excessive force. *Id.* ¶ 49. Plaintiffs also contend that all Defendants had "actual knowledge" that Defendant Corporal Wilson "had a demonstrated propensity to use unlawful and excessive force." *Id.* ¶ 44. Plaintiffs further contend that Corporal Wilson was not wearing a body camera during his assault of Mr. Lehan and that "the policy to

have body camera on officers doing part-time work" was not implemented "until a few weeks later." *Id.* ¶ 50.

### C. Procedural Background

On February 12, 2021, Plaintiffs filed the instant Complaint against Defendants asserting thirteen causes of action. On March 22, 2021, Defendant Corporal Wilson filed an Answer to the Complaint, ECF No. 7. On March 25, 2021, Defendant Calvert County filed the now pending Motion to Dismiss, ECF No. 8, and on April 5, 2021, State Defendant also filed a Motion to Dismiss, ECF No. 10. On April 15, 2021, Plaintiffs opposed Defendant Calvert County's Motion to Dismiss, ECF No. 15. On April 16, 2021, Defendant A&A Gaming filed the additionally pending Motion to Dismiss, ECF No. 18. On April 29, 2021, Defendant Calvert County filed a reply to Plaintiffs' opposition, ECF No. 22, and on the same day, Plaintiffs filed a Notice of Dismissal Without Prejudice of Defendant State of Maryland in which they voluntarily dismissed, without prejudice, their claims against Defendant State of Maryland, ECF No. 23. On May 14, 2021, Plaintiffs opposed Defendant A&A Gaming's Motion to Dismiss, ECF No. 24, and on May 21, 2021, Defendant A&A Gaming filed its reply, ECF No. 25.

### II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("[A]

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, see *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III.   DISCUSSION

### A. Defendant Calvert County Board of County Commissioners' Motion to Dismiss

Defendant Calvert County argues that Plaintiffs fail to state a claim against it in Counts I–II, and XII, that governmental immunity applies to all of Plaintiff's non-constitutional, state tort claims Counts V, VI, VII, VIII, XIII, *see* ECF No. 8-1 at 3–14, 14–17,[5] and that Plaintiffs are prohibited from seeking punitive damages, *id.* at 17–18. In response, Plaintiffs have chosen

---

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

10

to withdraw their common law tort claims against Defendant Calvert County including the following: Counts V (battery), VI (false arrest), VII (malicious prosecution), VIII (negligent training/supervision/ retention), and XIII (intentional infliction of emotional distress).[6] ECF No. 15-1 at 20–21. The Court will address each argument, with respect to the remaining claims, separately.

### 1. *Monell* and *Longtin* Pattern or Practice Claims (Counts I–II, XII)

If any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, he may be liable in a suit for money damages. 42 U.S.C. § 1983. In what is commonly referred as to a *Monell* claim, Section 1983 permits a plaintiff to bring a claim directly against a municipality if it causes a deprivation of a constitutional right through an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Thus, a local government, such as Calvert County, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

And while *Monell* does not impose heightened pleading requirements above the basic "short and plain statement" requirement of Fed. R. Civ. P. 8(a), *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), it still requires Plaintiff to adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights[,]" *Jordan by Jordan v.*

---

[6] Defendant Calvert County does state that it seeks the dismissal of Count IX, ECF No. 8-1 at 14, however, as Plaintiffs note, this is a claim for negligent training/ supervision/retention against Defendant A&A Gaming only, *see* ECF No. 1 ¶¶ 129–141. The Court, therefore, disregards this as an error.

*Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). "A municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). The key, therefore, is that the municipality's conduct must demonstrate "deliberate indifference" to the rights of "potentially affected citizens, in order for conduct to be properly thought of as a "policy." *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997). Moreover, "'*Longtin* claims are essentially Maryland's version of *Monell* claims,'" *Devi v. Prince George's Cty.*, No. 16-cv-3790-DKC, 2017 WL 3592452, at *4 (D. Md. Aug. 21, 2017) (quoting *Rosa v. Board of Educ.*, No. 11-cv-02873-AW, 2012 WL 3715331, at *9 (D. Md. Aug. 27, 2012)). "Maryland, like the federal government, imposes liability on municipalities for widespread patterns or practices that cause constitutional injuries." *McMahon v. Cty. Comm'rs*, No. 13-cv-490-JFM, 2013 WL 2285378, at *4 n.6 (D. Md. May 21, 2013) (citing *Prince George's Cty. V. Longtin*, 419 Md. 450, 494-98 (2011)). Therefore, such claims will be analyzed together.

A Plaintiff can demonstrate the existence of a policy or custom for which a municipality may be liable in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Here, Plaintiffs' Complaint does not identify an express policy, through a written ordinance or regulation, nor does it identify a policy established through the decisions of a person with final policymaking authority. Rather,

Plaintiff attempts to allege a so-called "condonation" theory of liability, ECF No. 15-1 at 16, specifically through the existence of an official policy or custom of (1) allowing deputy sheriffs, including Defendant Corporal Wilson, to use excessive force and brutality against individuals and failing to train, supervise, and discipline its deputy sheriffs in the proper use of constitutional force (Count I), ECF No. 1 ¶¶ 53–55, 56–58, 60; and (2) allowing deputy sheriffs, including Defendant Corporal Wilson, to unlawfully arrest and seize individuals and failing to train, supervise, and discipline its deputy sheriffs in proper constitutional seizures (Count II), *id.* ¶¶ 66, 69–71, 67–69, 71–74.[7]

### i. Condonation

"Under a *Monell* condonation theory of liability, a municipality is liable if its policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Cottman v. Baltimore Police Department*, No. 21-cv-00837-SAG, 2022 WL 137735, at *6 (D. Md. Jan. 13, 2022) (quoting *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014)). To state a claim for liability under this theory, a plaintiff must point to a "'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to

---

[7] Defendant Calvert County notes that Plaintiffs are suing Defendant Corporal Wilson in both his individual and official capacities and that, "as a matter of Maryland law, county sheriffs are deputy sheriffs are officials and/or employees of the State, not the County." ECF No. 8-1 at 1 n.1. Plaintiffs "dispute Calvert County's assertion that county sheriffs and deputy sheriffs are officials and/or employees of the State, not the county." *See* ECF No. 15-1 at 9 n.1. Defendant Calvert County is correct. *See Collington v. Maryland*, No. GJH-20-966, 2021 WL 3172275, at *17 (D. Md. July 26, 2021) (noting that "the individual Law Enforcement Defendants whose conduct is at issue are not agents of the county but rather are agents of the state."); *see also* Md. Code Ann., State Gov't § 12-101(a)(6) (defining "State personnel" to include "a sheriff or deputy of a county"); *Willey v. Ward*, 197 F. Supp. 2d 384, 387–88 (D. Md. 2002) ("[A]s a matter of Maryland law, the Sheriff and Deputy Sheriffs of [a Maryland County] are officials and/or employees of the State of Maryland rather than of [the] County." (alterations in original) (internal quotation omitted).

Defendant Calvert County also correctly notes that "state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself," ECF No. 8-1 at 1 n.1, but because claims against Defendant Corporal Wilson, in either his individual or official capacity, are not at issue in the now pending motions, the Court need not specifically address this point.

correct it due to their 'deliberate indifference.' Both knowledge and indifference can be inferred

from the 'extent' of employees' misconduct. Sporadic or isolated violations of rights will not

give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Owens*, 767 F.3d at

402–03 (internal citations omitted) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir.

1987)).

    "A plaintiff must allege numerous particular instances of unconstitutional conduct in

order to establish a custom or practice, because 'a municipality is not liable for mere isolated

incidents of unconstitutional conduct by subordinate employees[.]'" *Weeden v. Prince George's

Cty.*, No. 17-cv-2013-GJH, 2018 WL 2694441, at *4 (D. Md. June 4, 2018) (quoting *Smith v.

Ray*, 409 Fed. App'x. 641, 651 (4th Cir. 2011) (quoting *Lytle*, 326 F.3d at 473)); *see also Talley

v. Anne Arundel Cty.*, Maryland, No. 21-cv-347-RDB, 2021 WL 4244759, at *14 (D. Md. Sept.

17, 2021) ("Alleging such a [persistent and widespread] practice requires a plaintiff to plead

prior instances of similar conduct.") (citing *Longtin*, 419 Md. at 497 (referencing plaintiff's

"multitudinous evidence that his experience was not an isolated incident.")). Defendant Calvert

County argues that Plaintiff's "single, isolated instance of alleged misconduct" from 2018, apart

from the allegations giving rise to the instant suit, is an insufficient basis upon which the Court

can infer municipal liability. *See* ECF No. 22 at 1, 6–7. The Court agrees.

    With respect to Plaintiffs' allegation of "a pattern and practice of unjustified,

unreasonable, and illegal excessive force and brutality, ECF No. 1 ¶ 54, Plaintiffs allege that

"Corporal Wilson has a history of using excessive force" and that "Defendants had actual

knowledge" of this, *id.* ¶ 44. Specifically, Plaintiff references, "[a]s just one example," an

incident that occurred on September 2, 2018. *Id.* ¶ 55. Plaintiffs allege that when Defendant

Corporal Wilson pulled over Calvert County resident John Alvarado, who declined to take a

14

breathalyzer test and was handcuffed behind his back and placed under arrest, Defendant

Corporal Wilson, "without provocation, warning, or cause . . . grabbed Mr. Alvarado by the

head, smashed his head against the side of the patrol car, and shoved him in the backseat of the

patrol car." *Id.* ¶¶ 45–46. Moreover, Plaintiffs allege that while he was handcuffed in the

backseat, Defendant Corporal Wilson "punched him three to five times in the face," and that

another deputy "had to tell [him] 'that's enough'" and physically pull him back "to stop the

assault." *Id.* ¶ 46.

      Plaintiffs argue that, based on this prior incident, they have "adequately pled a *Monell*

claim" with respect to Calvert County Defendant's "condonation of its officers' pattern and

practice of unconstitutional conduct, unjustified and unreasonable excessive force," ECF No. 15-

1 at 16, and, in support of their argument, cite to a series of cases in which this Court has denied

motions to dismiss Section 1983 pattern and practice claims, *id.* at 11–15; however, most of the

cases are distinguishable from Plaintiffs for a key reason: the plaintiffs in those cases alleged

more than a single incident or case beyond their own allegations. In *Brown v. Tshamba*, No. 11-

cv-00609-RDB, 2011 WL 2935037, at *5 (D. Md. July 18, 2011), plaintiffs "asserted sufficient

claims to establish a 'deliberate indifference' on the part of the Baltimore Police Department

where plaintiffs claimed that the officer "shot a person on *two separate occasions prior* to

shooing Brown," that "on one of these occasions [he] was intoxicated," and that he was involved

in a "*fourth private incident* of misconduct prior to the June 5 shooting at issue in this case."

(emphasis added). Likewise, in *Jones v. Chapman*, No. 14-cv-2627-ELH, 2015 WL 4509871, at

*15 (D. Md. July 24, 2015), the court denied a motion to dismiss claims of an unconstitutional

policy or custom of deliberate indifference to the use of excessive force because plaintiff did

"not rely solely on conclusory assertions and the singular incident with Mr. West" and, in the

complaint, "identified *three purported instances* of the BPD's use of excessive force prior to the occurrence with the Decedent." (emphasis added). And in *Rico v. Green*, No. 18-cv-1949-GJH, 2021 WL 1215775, at *29 (D. Md. Mar. 30, 2021), the plaintiff alleged "sufficient factual detail to support his *Monell* claim based on unofficial policy or custom" because plaintiff "relie[d] on *two attacks* by the same correctional officer, Defendant Watkins, against the same inmate himself," alleged that another correctional officer complained about the defendant because he "is abusive to the inmates and asks officers to cover for him," and because plaintiff pled that he was aware of other inmates who had been assaulted by the defendant or other correctional officers at the correctional facility (emphasis added). Plaintiffs also cite to *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014), *see* ECF No. 15-1 at 14, for additional support as the Fourth Circuit, in reversing a grant of a motion to dismiss, held that plaintiff's allegations of "the existence of 'reported and unreported cases'" against the Baltimore County Police Department and "numerous successful motions" against it was sufficient to allege a custom, policy, or practice of knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions. *Id.* "Although the complaint did not cite any of these cases, the Fourth Circuit noted that the 'brief, but non-conclusory' allegations of these cases and motions, 'if true, would buttress [plaintiff's] legal conclusion.'" *Talley v. Anne Arundel Cty., Maryland*, No. 21-cv-347-CDB, 2021 WL 4244759, at *14 (D. Md. Sept. 17, 2021) (quoting *Owens*, 767 F.3d at 403).

Here, Plaintiffs' Complaint does not approach the level of detail offered in those cases. Plaintiffs allege that Defendant Calvert County "permitted and tolerated a pattern and practice of unjustified, unreasonable, illegal excessive force and brutality," ECF No. 1 ¶ 54. However, Plaintiffs fail to plead conduct that is sufficiently "frequent" and "widespread" to establish a tacit

policy by condonation. *Cf. Owens*, 767 F.3d at 402–03. Plaintiffs summarily conclude that

"Defendant Corporal Wilson's conduct . . . represents not a single isolated, or accidental, or

peculiar event," but rather was part of "the regular procedures followed by Calvert County

sheriffs and constitutes a pattern or practice of such conduct." ECF No. 1 ¶ 53. Only one

instance, the 2018 case, is actually identified, however. Plaintiffs' claims fall woefully short of

the multiple instances and factual detail alleged in *Brown*, *Jones*, and *Rico*, and the volume of

cases alleged in *Owens*. This holds true even more so for Plaintiffs' separate allegation that

"Defendant Calvert County permitted and tolerated a pattern and practice of unjustified,

unreasonable, and unlawful arrests and seizures," *id.* ¶ 66, as Plaintiffs provide no examples

supporting this claim beyond the allegations giving rise to the instant suit. *See id.* ¶ 69; *see*

*generally id*. Plaintiffs, thus, make only bald assertions that Defendant Calvert County has

condoned its officers' pattern and practice of unlawful seizures. *See Weeden*, 2018 WL 2694441,

at *4 (dismissing *Monell* claim where plaintiff failed to provide "any examples of alleged

unconstitutional behavior" beyond the allegations giving rise to the suit). In sum, "§ 1983

liability will not be inferred merely from municipal inaction in the face of isolated constitutional

deprivations by municipal employees." *See Milligan*, 743 F.2d at 230.

Therefore, Plaintiffs fail to state a claim for *Monell* and *Longtin* liability against

Defendant Calvert County for condonation of its officers' pattern and practice of excessive force

and unlawful arrests and seizures, and Counts I, II, and XII, with respect to these allegations,

must be dismissed. *See Weeden*, 2018 WL 2694441, at *4 n.10 (dismissing plaintiff's *Monell*

claim and noting that plaintiff's *Longtin* claim fails for the same reason); *see also Talley*, 2021

WL 4244759, at *14 (same).

### ii.   Failure to Train, Supervise, or Discipline

Regarding Plaintiffs' claims of failure to train, supervise or discipline, it is "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice . . . [that] a [county may] be liable[.]" *City of Canton, Ohio v. Harris*, 489 U.S. at 388–89 ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact"). Thus, Plaintiffs' Complaint "should contain facts revealing (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." *Lewis v. Simms*, No. 11-cv-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (citing *Drewry v. Stevenson*, No. 09-cv-2340-WDQ, 2010 WL 93268, at *4 (D. Md. Jan. 6, 2010)). Plaintiffs, however, have not even attempted any such facts; instead, they simply state, in broad, conclusory terms that Defendant Calvert County failed to train, supervise, and discipline its deputy officers.

Specifically, Plaintiffs allege that "Defendant Calvert County has failed to properly train, prosecute, supervise, and discipline its deputy officers, including, but not limited to, Defendant Wilson, in the proper constitutional use of force," and "the proper use of constitutional seizures," ECF No. 1 ¶¶ 56, 67, that "[t]he failure to properly train, prosecute, supervise, and discipline its officers demonstrates a gross disregard for the constitutional rights of the public and was a proximate cause of the [Plaintiffs'] rights being violated and injuries," *id.* ¶¶ 57, 68, and that "Calvert County's actions demonstrated a deliberate indifference and/or tacit approval of the use of excessive force by employees of the Sheriff's Office" and "approval of unlawful seizures by employees of the Sheriff's Office, *id.* ¶¶ 58, 71. Without more, Plaintiffs have failed to adequately allege the existence of a policy or custom through Defendant Calvert County's

purported failure to train its officers. *See Milligan*, 743 F.2d at 230 (upholding the district court's dismissal of a plaintiff's *Monell* claim where the complaint alleged only that the City was "'grossly negligent' in failing adequately to train its personnel and that this exhibited 'callous disregard' for [the plaintiff]'s constitutional rights"); *Rico*, 2021 WL 1215775, at *30 (finding that plaintiff failed to allege *Monell* claim where the plaintiff alleged that Montgomery County "failed to train, supervise, or discipline its correctional officers to ensure that they properly carried out their duties[,]" that "Montgomery County officials were deliberately indifferent to the fact that this failure to train, supervise, or discipline its correctional officers would lead to the use of excessive force against inmates and unreasonable strip searches of inmates[,]" and that "Montgomery County officials knew that prison officials would confront similar or identical situations involving inmates and that correctional officers had a history of applying excessive force to inmates.") (internal quotations omitted).

Facing the same fate as their condonation claims, Plaintiffs also fail to allege *Monell* and *Longtin* claims against Defendant Calvert County for its purported failure to train, supervise, or discipline its deputy sheriffs in the constitutional use of force and constitutional seizures. Therefore, Counts I, II, and XII, with respect to these allegations, must also be dismissed, *see Weeden*, 2018 WL 2694441, at *4 n.10, and the entirety of Counts I, II, and XII against Defendant Calvert County will be dismissed.

## 2. Punitive Damages

In the claims that remain against Defendant Calvert County, specifically the state law constitutional claims in Counts X and XI, Plaintiffs seek punitive damages. *See* ECF No. 1 at 33, 35. Defendants seek the dismissal of Plaintiffs' request for such damages as they are prohibited by law. ECF No. 8-1 at 17–18. Plaintiffs respond that "any motion regarding punitive damages is

premature at the motion to dismiss stage," ECF No. 15-1 at 21, which completely fails to address the relevant law cited by Defendant Calvert County. The law in Maryland is clear on this issue. "Maryland law disallows any such assessment of punitive damages against a county." *Robles v. Prince George's Cty.*, 302 F.3d 262, 273 (4th Cir. 2002) (citing Md.Code Ann., Cts. & Jud. Proc. § 5–303(c)(1)); *see also Williams v. Anderson*, 753 F. Supp. 1306, 1311 (D. Md. 1990) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983.") (internal quotations omitted) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

Because it is prohibited under Maryland law, Plaintiffs will not be permitted to seek punitive damages against Defendant Calvert County.

### B. Defendant A&A Gaming, LLC's Motion to Dismiss

Defendant A&A Gaming argues that Plaintiff's state law tort claims of battery (Count V), false arrest (Count VI), and intentional infliction of emotional distress (Count XIII) against it fail because Defendant Corporal Wilson's conduct is not imputable to A&A, and that Plaintiffs have failed to plead sufficient facts to support their claims of negligent training, supervision, and retention (Count IX), ECF No. 18 at 1–2. The Court will address each argument separately.

### 1. Vicarious Liability (Counts V, VI, and XIII)

"Under Maryland law, the doctrine of respondeat superior provides for three theories of employer liability for an employee's torts." *Lee v. Pfeifer*, 916 F. Supp. 501, 507 (D. Md. 1996). "'[A] master is liable for the acts which his servant does with the actual or apparent authority of the master, or which the servant does within the scope of his employment, or which the master ratifies with the knowledge of all material facts.'" *Id.* (quoting *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 119 A.2d 423, 427 (1956)). Plaintiffs' Complaint alleges liability against Defendant A&A Gaming under the "scope of employment" theory for its claims of battery

20

(Count V), false arrest (Count VI), and intentional infliction of emotional distress (Count XIII).
*See* ECF No. 1 ¶¶ 9, 96–97, 184. Defendant A&A Gaming argues that it is not vicariously liable
for Defendant Corporal Wilson's malicious conduct. ECF No. 18-1 at 5–9.

"Although 'there are few, if any, absolutes' involved in determining whether an
employee's acts occurred within the 'scope of employment,' the general test in Maryland is that
the acts must have been authorized and in furtherance of the employer's business." *Williams v.
Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 483 (D. Md. 1999) (quoting *Sawyer v.
Humphries*, 322 Md. 247, 255, 587 A.2d 467, 470 (1991)). In *Sawyer*, the Maryland Court of
Appeals held that:

> The simple test is whether they were acts within the scope of his employment; not
> whether they were done while prosecuting the master's business, but whether they were
> done by the servant in furtherance thereof, and were such as may fairly be said to have
> been authorized by him. By "authorized" is not meant authority expressly conferred, but
> whether the act was such as was incident to the performance of the duties entrusted to
> him by the master, even though in opposition to his express and positive orders.

322 Md. at 255 (internal quotation marks and citation omitted). Another factor important to
determining whether acts fall within the scope of employment is "whether the employee's
conduct was 'expectable' or 'foreseeable.'" *Id.* (quoting *Cox v. Prince George's County*, 296
Md. 162, 171, 460 A.2d 1038, 1042 (1983)). "[P]articularly in cases involving intentional torts
committed by an employee," the Maryland Court of Appeals "has emphasized that where an
employee's actions are personal, or where they represent a departure from the purpose of
furthering the employer's business, or where the employee is acting to protect his own interests,
even if during normal duty hours and at an authorized locality, the employee's actions are
outside the scope of his employment." 322 Md. at 256–57. Moreover, where the employee's
conduct is "unprovoked, highly unusual, and quite outrageous," *id.*, it "counsels toward a finding
that the conduct was purely personal in nature and outside the scope of employment." *Lins v.*

21

*United States*, 847 F. App'x 159, 166 (4th Cir. 2021) (citing *Sawyer*, 322 Md. at 257). "This test must be applied on a case-by-case basis, and whether an employee acted within the scope of her employment is typically a question of fact for the jury. However, in appropriate cases . . . a court can determine as a matter of law whether an employee acted within the scope of her employment." *Id.* at 167 (internal citations omitted).

Plaintiffs' own allegations, designed to demonstrate the allegedly outrageous behavior of Corporal Wilson, provide at least some support for the argument that Corporal Wilson may have been operating based on his own motivations and not in furtherance of his employer. Specifically, Plaintiffs allege that "Mr. Lehan was not engaged in any disruptive conduct or unusual conduct," even though Defendant Corporal Wilson told him that he was "cutting him off" from ordering any additional drinks and requiring him and his wife to leave. ECF No. 1 ¶¶ 17, 20. At their state court trial stemming from this incident, Plaintiffs allege that Defendant Corporal Wilson testified that no one at Abner's had complained to him about Plaintiffs, that there was no crowd around them, and that "they were not being disruptive, and everyone was minding their own business," *id.* ¶ 32. He also testified that his previous "procedure" for individuals who had been asked to leave the establishment was to first allow them to pay their tab before escorting them out, but, here, Plaintiffs allege, after the bartender returned with Mr. Lehan's credit card and they prepared to leave, "without warning or provocation," Defendant Corporal Wilson "lunged forward towards Mr. Lehan, pushed past Detective Mudd, and grabbed Mr. Lehan" and that he punched him "repeatedly in the face," which ultimately caused him to black out. *Id.* ¶¶ 32, 25–26. Plaintiffs also allege that Defendant Corporal Wilson "had no rational reason to believe that Mr. Lehan or Mrs. Lehan had committed an offense," but that he

unlawfully arrested them anyway "out of ill-will, actual malice, and for the improper purpose of bolstering Defendant Wilson's version of events." *Id.* ¶¶ 101–102.

Nonetheless, these allegations still arise in the context of Corporal Wilson, a part-time employee of Defendant A&A Gaming, providing security services for the bar during a cash raffle. While not specified in the Complaint, one can easily infer that his expected duties would involve removing unruly bar patrons. Thus, at this early stage, the Court cannot state as a matter of law that he was not acting in furtherance of Defendant A&A Gaming's business in seeking to remove Plaintiffs, even if doing so in an allegedly unjustified and excessive manner.

*Market Tavern, Inc. v. Bowen*, 92 Md. App. 622, 655, 610 A.2d 295, 312 (1992), is helpful. There, appellant Market Tavern hired security personnel to deter disturbances among its patrons. *Id*. at 628. A male patron repeatedly touched the hair of a female patron after being told not to do so and was then knocked to the ground, beaten and kicked by security. *Id*. After a jury trial, the Court of Special Appeals for Maryland upheld the trial court's finding that the intentional tort had been committed in the scope of the security personnel's authority where "their authorized duties included bodily restraining and even bodily removing patrons if necessary" and they were "authorized to break up fights, restore order, and defend themselves or others." *Id*. at 655. Here, Corporal Wilson was working as security in a bar with similar responsibilities when it is alleged that he used excessive force and ultimately falsely arrested patrons as part of his effort to remove them from the establishment. While further factual development may establish this was a completely unprovoked attack, entirely personal in nature, thus potentially absolving his employer of vicarious liability, the Court will not make such a finding at the Motion to Dismiss stage.

23

Defendant A&A Gaming also makes a related argument that because Corporal Wilson's power to arrest Plaintiff came from his employment as a police officer and not from his employment with Defendant A&A Gaming, they cannot be liable for false arrest. ECF No. 18-1 at 9. An almost identical argument was made and rejected in *Lovelace v. Anderson*, 366 Md. 690, 785 A.2d 726 (2001). There, the Court found that a hotel could be held liable for the actions of a Baltimore police officer who fired shots using a police department issued firearm while working as part-time security, because he was acting in the scope of his employment as a security guard for the hotel in trying to prevent a robbery. *Id*. at 720–21. Similarly, here, Defendant A&A Gaming hired a police officer to provide security and it is alleged that he used his police powers, including the power to make an arrest, at least, in part, to further the purposes of his employment with Defendant A&A Gaming.  Accordingly, Defendant A&A Gaming's Motion to Dismiss will not be granted on this basis.

Nonetheless, Plaintiffs' intentional infliction of emotional distress claim, ECF No. 1 ¶¶ 173–184, will still be dismissed.

To state a claim for IIED under Maryland law, Plaintiffs must allege that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe." *Borchers v. Hyrchuk*, 126 Md. App. 10, 18, 727 A.2d 388, 392 (1999). In Maryland, an IIED claim is "rarely viable," *id.*, and courts have imposed "liability sparingly and . . . limited the tort to situations where the 'wounds are truly severe and incapable of healing themselves,'" *Lee v. Queen Anne's Cty. Off. of Sheriff*, No. 13-cv-672-RDB, 2014 WL 476233, at *16 (D. Md. Feb. 5, 2014) (quoting *McDaniel v. Maryland*, No. 10-cv-00189-RDB, 2010 WL 3260007, at *9 (D. Md. Aug. 18, 2010)). And "[a] plaintiff must show

that 'he suffered a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it.'" *Jeffries v. Ayoub*, No. 17-cv-02973-PX, 2019 WL 3306017, at *7 (D. Md. July 23, 2019) (quoting *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (2000)).

Here, Plaintiffs' allegations that, as a result of the altercation with Defendant Corporal Wilson and their subsequent arrest and being held overnight in the Calvert County Detention Center, Mr. Lehan suffered emotional damages including "conscious pain and suffering, humiliation, embarrassment, emotional trauma, fright, nervousness, indignity, insult, and severe emotion distress," and that Mrs. Lehan suffered "pain and suffering, humiliation, embarrassment, emotional trauma, fright, nervousness, indignity, insult, and other emotional injuries," ECF No. 1 ¶¶ 181–182, are not beyond that which "no reasonable [person] could be expected to endure[.]" *Thacker*, 135 Md. App. at 315. The Complaint contains no other allegations on this point. Therefore, Plaintiffs' allegations are simply too conclusory to establish severe emotional distress for the purposes of an IIED claim. *See Griffin v. Clark*, No. 11-cv-2461-RWT, 2012 WL 4341677, at *3 (D. Md. Sept. 20, 2012) (dismissing IIED claim and noting that "Maryland courts have found that mere embarrassment, public humiliation, feelings of inferiority, or shame do not rise to the level of severe emotional distress."); *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (dismissing IIED claim where plaintiff did "not allege that she has been unable to function on a daily basis, even if her functioning is presumably affected by her psychological and physical distress."). As such, Count XIII will be dismissed.[8]

---

[8] Defendant A&A Gaming did not make any alternative argument with respect to Plaintiffs' battery claim, Count V, *see* ECF No. 18-1; ECF No. 25, therefore because this Court denied the Motion on the basis of vicariously liability, Plaintiffs' battery claim survives.

### 2.   Negligent Training, Supervision, and Retention (Count IX)

Maryland has recognized that an employer has an "obligation to the public to use due care in selecting and retaining only competent and careful employees." *Jarvis v. Securitas Sec. Servs. USA, Inc.*, No. 11-cv-00654-AW, 2012 WL 527597, at *6 (D. Md. Feb. 16, 2012), *aff'd sub nom.*, *Jarvis v. Contractor Securitas Sec.*, 474 Fed. App'x. 271 (4th Cir. 2012) (quoting *Henley v. Prince George's Cty.*, 60 Md. App. 24 (Md. Ct. Spec. App. 1984)). To state a claim for negligent training, retention, or supervision, a plaintiff must allege: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring [supervising], or retaining [the] employee . . . as the approximate cause of plaintiff's injuries." *Jarvis*, 2012 WL 527597, at *5 (citing *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 272 (Md. Ct. Spec. App. 2011)); *see also McGuiness v. Brink's Inc.*, 60 F. Supp. 2d 496, 501 (D. Md. 1999) (identifying elements)*; Bryant v. Better Bus. Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (noting that for a negligent training and supervision claim, the plaintiff must allege that employer knew or should have known of the employee's "conduct or general character which would have caused a prudent employer in these circumstances to have taken action.").

Moreover, "[u]nder Maryland law, an employer's liability in this regard is not to be reckoned simply by the happening of the injurious event. Rather, there must be a showing that the employer failed to use reasonable care in making inquiries about the potential employee or in supervising or training the employee." *Gay v. United States*, 739 F. Supp. 275, 277 (D. Md. 1990) (citing *Cramer v. Housing Opportunities Commission*, 304 Md. 705, 501 A.2d 35 (1985)). Here, while Plaintiffs have alleged the existence of an employment relationship between

Defendant Corporal Wilson and Defendant A&A Gaming, *see* ECF No. 1 ¶¶ 9, 14, and incompetent conduct that injured Plaintiffs, *see id.* ¶¶ 25–28, 92–94, 99–101, 121, Plaintiffs' complaint, is devoid of actual facts about Defendant A&A Gaming's training and supervision or about its selection of Defendant Corporal Wilson, or any other employee. *See generally id.*

While Plaintiffs do provide a factual allegation of alleged excessive force by Defendant Corporal Wilson from September 2018, *see id.* ¶¶ 45–46, Plaintiffs only summarily conclude, with no specific factual allegations, that all Defendants, including Defendant A&A Gaming, "had actual knowledge that Corporal Wilson has a demonstrated propensity to use unlawful and excessive force," *id.* ¶ 44, and that "Defendant A&A Gaming knew or should have known of Defendant Wilson's practice of doing so[,]" *id.* ¶ 132. And with respect to the 2018 incident involving Defendant Corporal Wilson, as Defendants note, *see* ECF No. 18-1 at 17, Plaintiffs make no factual allegations as to when Mr. Alvarado notified the Calvert County Sheriff's Office of his complaint or that this information was reported to Defendant A&A Gaming or that it had any reason to know that he was involved in this particular traffic stop with Mr. Alvarado. In opposing Defendant A&A Gaming's arguments, Plaintiffs contend that *Jarvis* is distinguishable, ECF No. 24-1 at 29, because, there, the plaintiff's claims for negligent training and supervision consisted "of little more than conclusory allegations and generalizations," 2012 WL 527597, at *5, but this is precisely all that Plaintiffs offer in their Complaint. This is further evidenced by Plaintiffs' arguments in opposition as they merely restate and cite the same conclusory assertions included in their Complaint, *see* ECF No. 24-1 at 29–31.

In sum, Plaintiffs' allegations are insufficient to sustain a negligent training, supervision, or retention claim. *See Karn v. PTS of Am.*, LLC, No. 16-cv-3261-GJH, 2017 WL 4162251, at *6 (D. Md. Sept. 19, 2017) (dismissing negligent hiring, training, and supervision claim due to

plaintiffs failure to allege "actual facts" about defendant's training, supervision, and selection of employees, or prior incidents of misconduct); *Jarvis*, 2012 WL 527597, at *6 (dismissing negligent retention claim where there were no allegations in the Complaint that demonstrate "the security guard was unqualified or incompetent at the time Defendant hired him."). While Plaintiffs are correct that their factual averments are assumed to be true and viewed in a light most favorable to them, the Court need not accept "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Therefore, Plaintiffs' negligent training, supervision, and retention claims will also be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Calvert County's Motion to Dismiss, ECF No. 8, is granted, and Defendant A&A Gaming's Motion to Dismiss, ECF No. 18, is granted, in part, and denied, in part. A separate Order shall issue.

Date: <u>March 8, 2022</u>              <u>        /s/                        </u>
                              GEORGE J. HAZEL
                              United States District Judge